USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10-7-08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REUBEN AVENT,

      Plaintiff,

- against -

SOLFARO, et al.,

      Defendants.

**AMENDED
REPORT AND
RECOMMENDATION**

02 Civ. 0914 (DAB) (RLE)

To the HONORABLE DEBORAH A. BATTS, U.S.D.J.:

## I. INTRODUCTION

This Report and Recommendation amends prior Report and Recommendation, docket #82, filed September 4, 2007. Docket #82 shall be **WITHDRAWN**, replaced by this Amended Report and Recommendation.

*Pro se* plaintiff, Reuben Avent ("Avent"), commenced this action on February 6, 2002, against defendants, Superintendent Nicholas Solfaro ("Solfaro"), Sergeant John Gentillo ("Gentillo"), and Correctional Officer Evan Washington ("Washington")[1] of the Rockland County Correctional Facility. In his complaint, pursuant to 42 U.S.C. § 1983, Avent alleges a violation of his Eighth Amendment right to be free from cruel and unusual punishment, and to adequate medical assistance, and his Fourteenth Amendment right to due process of law. On March 29, 2002, the Honorable Richard C. Casey referred this case to the undersigned for general pretrial matters and all dispositive motions. Following Judge Casey's untimely death, the case was transferred to Judge Batts. Pending before the Court is defendants' motion for

---

[1] On May 13, 2005, Correctional Officer Washington passed away, and is no longer a party to this action. *See* Memorandum of Law in Support of Defendants' Motion for Summary Judgment at 3.

summary judgment (Doc. #54) and Avent's cross-motion for summary judgment. For the reasons set forth below, I recommend that defendants' motion be **GRANTED** and Avent's cross-motion be **DENIED**.

## II. BACKGROUND

### A. Factual Allegations

On April 28, 2001, Avent was incarcerated as a pretrial detainee in Rockland County Jail ("RCJ") for charges relating to a robbery. (Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Def. Mem.") at 1.) Avent alleges that Washington and Gentillo violated his Eighth Amendment rights by denying him recreation, using excessive force, and denying him medical care. (*See* Compl. at 4-5.) He claims that Solfaro permitted the violations, failed to let him participate in a disciplinary hearing, and restricted his library access. *Id.*

On July 23, 2001, Avent was being housed in single inmate housing in the A-Wing of RCJ and was subject to lock-in for twenty-three hours a day. (Def. Mem. at 1.) That morning, Avent requested permission to use the law library. (Attorney Affidavit, Richard B. Golden ("Def. Aff."), Ex. CC at 48.) Avent states that he used the law library at approximately 9:00 or 9:30 a.m. and that there was no sign-in log at the library. *Id.* However, Washington's daily log of the A-Wing on that day indicates that Avent, who was housed in cell six, *id.* at 47, went to the law library at 8:31 a.m. (Def. Aff., Ex. R.) Avent was permitted to go outside for recreation time at approximately 9:30 a.m., where he was told that the nurse wanted to see him for the daily physical observation. (Def. Aff., Ex. CC at 62.) He refused the visit, as he intended to play basketball and did not want to use his recreation time for the nurse visit. *Id.* at 63. During

2

Avent's recreation time, two other inmates began to argue and Avent tried to break up the argument. *Id.* at 68. In response to the argument, Washington arrived in the recreation area and told everyone to "lock-in" and return to their cells. *Id.* at 74. Washington noted in the daily log that the altercation between the two inmates occurred at 10:23 a.m. (Def. Aff., Ex. R.) Avent returned to his cell and began telling the other inmates to hurry and lock-in so that they could return outside. (Def. Aff., Ex. CC at 76.) Washington told him that there would be no more recreation time for that day, and Avent responded by asking in a raised tone of voice to speak to the sergeant. *Id.* at 79. When told that he could not speak to the sergeant, Avent began banging on the cell door with his hands and yelling his request to speak to the sergeant. *Id.* at 80, 85. Other inmates began banging on their cell doors. *Id.* at 82. Avent claims that while the other inmates were still banging on their doors, Sergeant Gentillo arrived and asked him what the problem was. *Id.* at 85. Avent said that Washington was the problem. *Id.* Avent claims that Gentillo stated he was not "in the mood," and sprayed mace in his face for approximately one minute. *Id.* at 85-86; (*see also* Plaintiff's Memorandum of Law ("Avent Mem.") at 22.)

Defendants assert that when Gentillo entered Avent's cell, Avent was turned away from him and he bent down and picked up something that Gentillo believed could be a weapon, and that Gentillo sprayed Avent to avoid harm to himself and Washington. (John Gentillo Affidavit ("Gentillo Aff.") ¶ 4.) Avent claims he was holding a pen and paper, and had begun to write a complaint to Solfaro regarding the loss of recreation time. (Def. Aff., Ex. CC at 93.) Washington then handcuffed Avent and allegedly shoved his face into the cell wall. (Def. Mem. at 3; Def. Aff., Ex. CC at 96.) Avent claims that Gentillo then pushed him through the cell doors face first and also used his face and shoulder to open two doors. (Def. Aff., Ex. CC at 100, 107.)

3

He also claims he was placed, handcuffed, in a holding cell for several hours where it was extremely cold. *Id.* at 109, 116. After an hour, possibly two, another officer removed the handcuffs. *Id.* at 117. Avent was then able to wash the chemical spray off his face, which caused it to burn again. *Id.* Defendants claim that various records demonstrated that Avent was offered the opportunity to wash his face to remove the chemical spray and was immediately offered medical attention. (Def. Mem. at 3 (citing Def. Aff., Exs. C, D, E, and S).) Avent briefly saw a doctor for his injuries at least by approximately 4:00 p.m., (Def. Aff., Ex. CC at 126.), although there are records that indicate Avent consulted a doctor at approximately 1:20 p.m. (Def. Mem. at 4 (citing Def Aff., Exs. Q, S, and CC at 126).) The injuries Avent alleges to have sustained from this incident are a cut lip, stinging eyes, black eyes, swollen nose, difficulty seeing, and difficulty breathing. (Def. Aff., Ex. CC at 121, 124, 127-28.) The treating physician, Dr. Burton Miller, noted in Avent's Clinical Progress Record that, although Avent complained of irritated eyes, his eyes were not bloodshot, and there were no signs of infection. (Def. Aff., Ex. Q; *see also* Affidavit of Antoine In Support of Motion for Summary Judgment ("Antoine Aff.") at 2.) The August 21, 2001 entry in the Clinical Progress Record indicates that Avent complained about additional problems resulting from the chemical spray, particularly with his nose. (Antoine Aff. at 2.) Additionally, Dr. Miller concluded that Avent did not exhibit any symptoms requiring x-rays or treatment. *Id.* at 3.

Avent claims that he was not told what charge resulted from the July 23, 2001, incident, and that he never pled "not guilty" to the offense. (Def. Aff., Ex. CC at 133.) However, the Notice of Infraction indicates that he was notified of the infraction by Gentillo on July 23, 2001, at 10:40 a.m. *Id.*; (Def. Aff., Ex. W.) That notice also indicates that Avent pled "not guilty" to

4

the infraction. (Def. Aff., Ex. W.) An infraction hearing was held on July 30, 2001, where it was determined that Avent incited a riot by kicking his cell door and urging other inmates to be disruptive. ( Def. Mem. at 4 (citing Def. Aff., Exs. C, J, S).) The infraction disposition, dated August 1, 2001, notes that, as a result of the July 30, 2001 hearing, the infraction was substantiated and disciplinary action was ordered, which included loss of visiting and commissary privileges. (Def. Aff., Ex. W.) Although Avent claims that he became aware of the hearing on August 1, 2001, the disposition notes that "inmate refused to attend hearing." *Id.*

On July 24, 2001, Avent attended court where he discussed the incident of the previous day with his mother. *Id.*, Ex. CC at 133. On July 26, 2001, Avent's mother lodged a verbal complaint against the facility for the mistreatment of her son. *Id.*, Ex. D. On August 2, 2001, Avent wrote a grievance letter to Solfaro complaining of an assault by officers and the denial of due process. (*See* Plaintiff's Exhibits Appendix, ("Avent's Ex.") A at 3.)

As a result of the events of July 23, 2001, Avent claims a violation of the Eighth Amendment prohibition against excessive force and deliberate indifference to medical needs, violations of his Fourteenth Amendment due process rights, and violation of his law library access. While Avent alleges various other violations in his motion papers, including retaliation arising out of an incident on May 30, 2001, this Court limited his complaint to the Eighth and Fourteenth Amendment due process claims arising out of the July 23, 2001 incident, and only those claims are addressed in this motion.

### III. DISCUSSION

#### A. Exhaustion Under the PLRA

The Prison Litigation Reform Act ("PLRA") provides: "No action shall be brought with

respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2000 ed.). The Supreme Court has interpreted the term "exhaust" to mean proper exhaustion, requiring conformity with the applicable administrative review process, including all deadlines. *See Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006). "Exhaustion is no longer left to the discretion of the district court, but is mandatory." *Id.* at 85. However, when a complaint contains unexhausted and exhausted claims, "'only the bad claims are dismissed; the complaint as a whole is not.'" *Jones v. Bock*, 127 S. Ct. 910, 924 (2007) (*quoting Robinson v. Page*, 170 F.3d 747, 748-49 (7th Cir. 1999)).

Defendants argue that Avent's failure to timely exhaust his administrative remedies requires dismissal of his entire complaint. (Memorandum of Law in Reply and Further Support of Defendants' Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment ("Defs.' Reply") at 2.) Avent does not dispute the date on which he filed his grievance.

Avent's claims of excessive force and medical indifference are unexhausted for failure to timely file the proper grievance with the Rockland County Correctional Center. The incident underlying his excessive force and medical indifference claims occurred on July 23, 2001. Avent first complained of the incident on August 2, 2001. (*See* Avent's Ex. A at 3.) The State Commission of Correction provides that "[p]ursuant to Section 7032.4(d) of Minimum Standards, inmates must filed a grievance within five days of the date of the act or occurrence giving rise to the grievance." (*See* Avent's Ex. C at 5.) Therefore, Avent's Eighth Amendment claims were not filed within the established five day period and were, therefore, not timely

exhausted. However, his procedural due process claims were timely exhausted, because the administrative hearing at which Avent claims his due process rights were violated, occurred on July 30, 2001. (Def. Aff., Ex. W.) Avent timely exhausted his procedural due process claims by filing a grievance on August 2, 2001, within the required five day period. Therefore, dismissal of the entire complaint is not warranted. *See Jones*, 127 S. Ct. at 924. However, for the reasons set forth below, I recommend summary judgment against Avent on the merits of his procedural due process claims.

## B. Standard for Summary Judgment

Summary judgment is appropriate where no reasonable trier of fact could find in favor of the nonmoving party, *H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1011 (2d Cir. 1989), thereby "dispos[ing] of meritless claims before becoming entrenched in a frivolous and costly trial." *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir. 1987). Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex*, 477 U.S. at 323. Where the Court is considering the claims of a *pro se* litigant, the pleadings must be construed liberally, especially if the complaint alleges civil rights violations. *Arnold v. Goetz*, 245 F. Supp. 2d 527, 534 (S.D.N.Y. 2003). However, a nonmoving party cannot rely merely on conclusory allegations or speculation, and "may not rest on the pleadings but must further set forth specific

7

facts in the affidavits, depositions, answers to interrogatories, or admissions showing a genuine issue exists for trial." *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted).

## C. Section 1983

### 1. Standard

In order to state a cause of action under 42 U.S.C. § 1983, a plaintiff must show that: (1) the conduct in question was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of his "rights, privileges or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (action brought under 42 U.S.C.§ 1983 for claimed violation of procedural due process rights). A plaintiff must also allege that defendants were involved and personally participated in the alleged deprivation. *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986); *Dove v. Fordham University*, 56 F. Supp. 2d 330, 336 (S.D.N.Y. 1999); *Zamakshari v. Dvoskin*, 899 F. Supp. 1097, 1109 (S.D.N.Y. 1995). "'[D]irect participation' as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001). Liability may not be predicated on a theory of *respondeat superior* or vicarious liability. *Zamakshari*, 899 F. Supp. at 1109. Thus, the plaintiff must "allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). A defendant occupying a supervisory

8

position may also be personally or directly involved if the defendant (1) failed to remedy the wrong after being informed of the violation through a report or appeal; (2) created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (3) was grossly negligent in supervising subordinates who committed the wrongful acts; or (4) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (*citing Williams*, 781 F.2d at 323-24).

## 2. Analysis

Because the substantive due process claim brought by Avent is unexhausted, the Court addresses only Avent's timely exhausted claim of procedural due process violation, which is directed at Solfaro. Avent does not allege that Solfaro was personally involved in the deprivation of his procedural due process rights. His theory of liability appears to be based on the creation, or tolerance, of a policy or custom under which unconstitutional practices occurred, Solfaro's failure to train and supervise officers, and Solfaro's failure to respond to his grievances. (Avent Mem. at 45, 49, 52.) He claims that Solfaro, who was Superintendent of Rockland County Jail at the time, failed to supervise Gentillo and Washington, therefore violating his constitutional rights. Specifically, he alleges that his rights were violated by Solfaro's "actions in allowing his officers to place [him] into intake, not allowing [him] to clean his cell, denying [him] the right to learn the law, having a discipline hearing without affording [him] due process for the above incident report and not giving [him] copies of incident reports and documents concerning this incident. . ." (Def. Aff.. Ex. A.) Avent further alleges that Solfaro knew, or should have known from the mace usage reports that Gentillo had used mace on him before.

9

Avent also claims that Solfaro violated state regulations that advise officers to base discipline on certainty and promptness, not severity, when Solfaro upheld the finding that Gentillo was justified in his use of chemical spray on a combative inmate who refused to comply with orders. (Avent Mem. at 49, Avent Ex. F at 1.)

Avent fails, however, to indicate any policies that constitute unconstitutional behavior, or that Solfaro was grossly negligent in his supervision of officers. Solfaro affirms that inmate grievances were carefully considered, allegations of wrongdoing by officers were investigated and dealt with, and he regularly communicated with officers to ensure strict compliance with the Standard Operating Procedures Manual. (Affidavit of Nicholas Solfaro ("Solfaro Aff.").) Solfaro further avers that Lieutenant Joseph Conjura investigated Avent's mother's complaints, and Lieutenant Stein investigated Avent's complaints. *Id.* at ¶¶ 7-9. Stein's investigation revealed no wrongdoing on the part of correctional officers, and Avent appealed. *Id.* at ¶¶ 10-11. Solfaro also indicates that the limitation of Avent's law library access was appropriate based on a review of Avent's disciplinary record. *Id.* at ¶ 14. He further affirms that officers followed the comprehensive policies for addressing use of chemical spray, and that Avent was afforded prompt medical attention after being sprayed. *Id.* at ¶¶ 16, 17.

### 3. Conclusion

Avent has demonstrated no basis on which Solfaro can be held personally liable because there is no evidence that Solfaro was aware of any constitutional violation of Avent's due process rights or otherwise that he allowed such a violation to continue. Therefore, Avent's claims of denial of recreation time, access to law library, access to incident reports, and the opportunity to clean his cell cannot be maintained, as the only remaining defendant is Gentillo, who was not

10

alleged to have caused the deprivation. Therefore, I recommend that defendants' motion for summary judgment be granted on Avent's claims against Solfaro, as well as his claims of deprivations of recreation time, law library access, and opportunity to clean his cell.

## IV. CONCLUSION

For the reasons set forth above, I recommend that defendants' motion for summary judgment be **GRANTED**, and Avent's cross-motion for summary judgment be **DENIED**. Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Deborah A. Batts, 500 Pearl Street, Room 2510, and to the chambers of the undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health &Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); FED. R. CIV. P. 72, 6(a), 6(d).

**DATED: October 7, 2008**
**New York, New York**

Respectfully Submitted,

Ronald Ellis

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

11

Copies of this Report and Recommendation were sent to:

Reuben Avent
01-A-5796
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

Michael Burke
Burke, Miele & Golden LLP
100 Washington Ave.
P.O. Box 397
Suffern, NY 10901